THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. LAWRENCE BROOKS, Defendant-Appellant.

First District (3rd Division)   No. 86—2218

Opinion filed June 22, 1988.—Rehearing denied August 11, 1988.

418

Paul P. Biebel, Jr., Public Defender, of Chicago (Donald S. Honchell, Assistant Public Defender, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Inge Fryklund, Kim A. Novi, and Ado L. Rugai, Assistant State's Attorneys, of counsel), for the People.

JUSTICE McNAMARA delivered the opinion of the court:

A jury found defendant Lawrence Brooks guilty of two counts of attempted murder, two counts of aggravated battery and two counts of armed violence. The trial court sentenced defendant to a term of 15 years for attempted murder. On appeal, defendant contends that the State failed to prove him guilty beyond a reasonable doubt; that the trial court improperly ruled on the admissibility of certain evidence; that the volunteered statements of certain witnesses resulted in an unfair trial; and that the trial court erred in imposing sentence.

Defendant was charged with shooting his ex-wife, Claudette Brooks, and his stepson, Charles Brooks. Defendant was found guilty of the same charges at an earlier trial, but the convictions were reversed because of the trial court's failure to instruct the jury properly. (*People v. Brooks* (1985), 130 Ill. App. 3d 747, 474 N.E.2d 1287.) The evidence adduced at the second trial is as follows.

Claudette testified that on May 27, 1982, she and Charles were in a courtroom at 51st Street and Wentworth Avenue in Chicago at a hearing concerning an assault claim defendant had filed against Charles. Defendant was so disruptive in the courtroom that he had to be admonished by a deputy sheriff. Defendant continued to harass Claudette. As a result, after the cause was continued, Charles and Claudette were escorted to their truck by a deputy sheriff.

As Charles drove away, the truck was stuck in traffic under a viaduct just west of the building. Claudette saw defendant, with a gun in his hand, approach the truck. At a distance of several feet, defendant pointed a gun through the truck's open window and began firing. Claudette raised her hand in front of her face. One bullet passed through Claudette's hand and then struck Charles in the head. Claudette testified that she moved around in the passenger side of the truck, attempting to avoid the gunfire. "I was just moving back and forth with my purse over my head." One bullet struck the left side of her head, and another bullet struck the left side of her neck.

Charles corroborated Claudette's testimony. He also stated that when the first bullet struck the side of his head, he fell out of the truck onto the pavement. Charles heard two more shots as he ran to the police station for help.

Leslie Streeter, an eyewitness, testified for the State that she was one-half block from the truck when she saw defendant fire a gun into the truck. Defendant then started running in the direction in which Streeter was walking. She also ran. He ran up beside Streeter, and she saw defendant take off his sweater and wrap it around a gun. They walked alongside each other for a quarter of a block.

Robert King testified for the State that he was picking up papers outside of a building when he heard several gunshots about 100 feet away. He saw defendant run toward him, holding a gun. Defendant yelled at King, "You didn't see shit!" Defendant continued running and appeared to be removing some of his clothing.

Ezra Hemphill, Claudette's stepfather, testified for the State that on the evening in question he received a telephone call from defendant. Defendant said, "I got Claudette and Chuckie and I'm coming to get you and Alice next." Hemphill reported the conversation to the police.

Cecilia Peeler testified for the State that she works at the 51st Street court house in the victim/witness assistance program of the State's Attorney's office. On the morning of May 27, 1982, defendant arrived at her office. He was upset because the court had not yet called his case. Although Peeler verified that the case would be called, defendant continued yelling and was very upset. Defendant stated to Peeler, "Yes, and my wife has nerve enough to be coming in here testifying against me. I could kill those sons of bitches." Later that day, Peeler saw Charles run into the police station. He was bleeding from the head and yelled, "He shot my mother, he shot my mother."

Dr. Edward Snyder testified for defendant that he treated Claudette's three gunshot wounds. One bullet struck the left side of her head, and he believed the bullet traveled downward. A second bullet entered the left side of her neck and traveled to the right side of the neck. The third bullet passed through her hand.

Defendant had testified at the first trial, but did not testify in these proceedings.

Defendant first contends that the State failed to prove him guilty of the charged offenses beyond a reasonable doubt. Defendant maintains that the medical evidence shows it is impossible for a bullet shot from the right side of the truck to enter the left side of Claudette's head. Defendant argues that "the bullet would naturally have entered her body from the right side." Defendant maintains that it was "inherently impossible for defendant, standing on [Claudette's] right side, to shoot her on her left side," and thus asserts it was Charles who shot Claudette.

■ The credibility of witnesses and the weight to be given their testimony is a matter for the trier of fact. (*People v. Akis* (1976), 63 Ill. 2d 296, 347 N.E.2d 733.) This court will not substitute its judgment for that of the trier of fact. (*People v. Dunklin* (1982), 104 Ill. App. 3d 685, 432 N.E.2d 1323.) The trier of fact's determination will be disturbed only where the evidence is so improbable, impossible or

unsatisfactory as to raise a reasonable doubt of defendant's guilt. *People v. Carlson* (1980), 79 Ill. 2d 564, 404 N.E.2d 233.

■ Claudette testified that when defendant approached her with a gun she threw her hand up in front of her face. She also raised her purse to cover her head. She moved around in an attempt to avoid the bullets. "I was just moving back and forth with my purse over my head." This testimony permitted the jury to reasonably infer that it was possible for defendant's bullets to enter on the left side of Claudette's head. We cannot say that this physical evidence was so improbable, impossible or unsatisfactory as to raise a reasonable doubt of defendant's guilt.

The two victims testified that defendant approached them with a gun and shot into the cab of the truck. Streeter saw defendant fire into the truck several times, wrap a sweater around the gun and run away. King heard several shots and saw defendant running away, carrying a gun. We conclude that defendant was proved guilty beyond a reasonable doubt.

Defendant next contends that the trial court improperly ruled on the admissibility of certain evidence and thus denied defendant a fair trial.

■ Defendant initially argues that the trial court erroneously denied the attempted impeachment of the credibility of Claudette. Defendant attempted to impeach Claudette by showing that in the first trial she omitted any statement that defendant grabbed her by the wrist or elbow as they were leaving the courtroom. The trial court sustained an objection and found that the attempted impeachment was not significant.

Generally, when a material omission exists in a prior statement, the fact of such omission is admissible. (*People v. Henry* (1970), 47 Ill. 2d 312, 265 N.E.2d 876.) The inconsistency, however, must be substantial and related to a material issue, and not to a collateral or irrelevant matter. (*People v. Pumphrey* (1977), 51 Ill. App. 3d 94, 366 N.E.2d 433.) Whether or not defendant grabbed the victim's elbow is not a substantial or material issue. The evidence concerning defendant's harassment of Claudette in the courtroom prior to the shooting served to describe the events leading to the shooting. The incident played only a minor, insignificant role in this description. Moreover, Claudette was not asked at the first trial about defendant touching her in the courtroom.

■ Defendant argues further that the trial court erred in permitting Cecilia Peeler to testify about remarks defendant made to her, because the communication was protected by the attorney-client privi-

lege. Peeler testified that she worked for the State's Attorney's office as a victim/witness assistant. On May 27, 1982, defendant entered her office, angry that the assault case involving Charles was not on the call. Defendant stated, "I could kill those sons of bitches." The trial court subsequently denied defendant's motion *in limine* to prevent the admission of this testimony.

The communication at issue does not fall under the elements and scope of the attorney-client privilege. (See *People v. Adam* (1972), 51 Ill. 2d 46, 280 N.E.2d 205, *cert. denied* (1972), 409 U.S. 948, 34 L. Ed. 2d 218, 93 S. Ct. 289.) Defendant did not seek legal advice from Peeler. Instead, he sought information on the administrative status of his case. Peeler was not a legal advisor. The communication did not relate to the purpose of legal advice. The communication was not made in confidence, since no such relationship had been established. Defendant was an alleged victim in that case, and the victim/witness assistant was merely available to facilitate his path through the criminal prosecution system. The trial court properly admitted Peeler's testimony.

■ Defendant next contends that Claudette's volunteered statement was so prejudicial that a mistrial should have been declared. On direct examination, Claudette was asked what happened after the first shot. She replied: "At that time, I was carrying a big purse and [defendant] had always told me, 'I would shoot your brains out.' " The court sustained an objection, struck the answer, and directed the jury to disregard the statement.

An improper remark will not result in reversal unless it appears that the guilty finding was the result of the error. (*People v. Morehead* (1970), 45 Ill. 2d 326, 219 N.E.2d 8, *cert. denied* (1970), 400 U.S. 945, 27 L. Ed. 2d 251, 91 S. Ct. 251.) This court must consider the trial as a whole in determining whether a new trial is necessary. (*People v. Paino* (1985), 137 Ill. App. 3d 645, 484 N.E.2d 1106.) A prompt objection, sustaining of the objection, and instruction to disregard the testimony generally cures any potential prejudice. (*People v. Bartall* (1983), 98 Ill. 2d 294, 456 N.E.2d 59.) In view of the overwhelming evidence of defendant's guilt, we cannot say the trial court erred in denying defendant's motion for a mistrial. Moreover, there is no evidence in the record to support defendant's accusations regarding prosecutorial collusion.

■ Defendant also maintains that Officer Tansey's remark that a warrant was out for defendant's arrest denied him a fair trial. Defense counsel asked Tansey whether defendant subsequently turned himself in to the police. Tansey replied, "That's correct Sir, there was

a warrant for his arrest." The court sustained an objection and struck the answer. The challenged remark did not cause substantial prejudice and, in view of the other evidence, the remark was not a material factor in defendant's conviction. See *People v. Whitfield* (1986), 140 Ill. App. 3d 433, 488 N.E.2d 1087.

■ Under this heading, defendant next contends that he was prejudiced by Dr. Snyder's remark to defendant as the doctor left the courtroom that he would see "him on the next appeal two years from now." The trial court specifically inquired as to whether any juror heard the statement. No juror replied. The court asked further whether the remark would affect the jury's deliberations, and no juror protested that, if heard, it would affect their deliberations. The court found that no irregularities occurred, and we can find nothing in the record to indicate that the guilty finding was the result of this comment.

■ Defendant finally argues that the trial court erred when it imposed the same term that he received following the first trial. Defendant maintains that the sentence is the result of improper consideration of evidence which was not in the record. Absent an abuse of discretion, a sentence will not be altered upon review. (*People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882.) The trial court may consider many factors, including defendant's credibility, demeanor, general moral character, mentality, social environment, habits, age, and the seriousness of the crime. (*People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882; *People v. Morgan* (1974), 59 Ill. 2d 276, 319 N.E.2d 764.) Aggravating factors here included defendant's obsession with killing his wife; the danger in which his wife remained; and the court's need to protect the family. We find no abuse of discretion in the imposition of sentence.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

WHITE, P.J., and FREEMAN, J., concur.