2019 IL App (2d) 170484-U
No. 2-17-0484
Order filed December 17, 2019r

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) | Appeal from the Circuit Court of Kane County. |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 14-CF-1969 |
| | ) | |
| PREONA MAYFIELD, | ) | Honorable |
| | ) | Donald M. Tegeler Jr., |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE BURKE delivered the judgment of the court.
Presiding Justice Birkett and Justice Schostok concurred in the judgment.

**ORDER**

¶ 1    *Held*:  (1) The trial court did not abuse its discretion in admitting video evidence: coupled with other evidence, the videos provided a continuing narrative of the events giving rise to the offense and also were pertinent to the validity of defendant's affirmative defense; (2) the trial court did not abuse its discretion in denying defendant's motion for a mistrial after a witness unexpectedly testified to a prior bad act, as the act was the codefendant's and the court gave the jury a strongly worded instruction to disregard it; (3) defendant showed no plain error in the State's closing argument, as the comment at issue was arguably proper and, in any event, the trial court sustained defendant's objection and instructed the jury that closing arguments are not evidence; (4) defendant's convictions of aggravated battery and mob action did not violate the one-act, one-crime rule, as the charges differentiated between closely related blows.

¶ 2    Defendant, Preona Mayfield, appeals her convictions of aggravated battery (720 ILCS 5/12-3.05(c) (West 2014)) and mob action (*id.* § 25-1(a)(1)).  She contends that the trial court abused its discretion in admitting YouTube videos into evidence and denying her motion for a mistrial.  She also argues that the State made improper comments in closing and that her conviction of mob action violated the one-act, one-crime rule.  We affirm.

¶ 3                                I. BACKGROUND

¶ 4    Defendant and her codefendant and father, Lynn Harris, were charged in connection with a November 3, 2014, altercation with Elena Perez and Perez's boyfriend, Carlos Castelan, in the parking lot of the Carpentersville police station.  A jury trial was held.  Defendant raised the affirmative defense of self-defense, and Harris raised defense of others.

¶ 5    Before trial, the State moved *in limine* to present YouTube videos showing defendant at the scene of a November 3, 2014, incident on Cherokee Road in Carpentersville involving Perez and Castelan.  The videos showed that defendant and others at the scene were angry and that members of defendant's family were arrested.  Defendant objected that the videos were irrelevant because they did not show that defendant was involved in any altercation on Cherokee Road or in the later altercation in the police station parking lot.  The State responded that the videos were relevant to show that defendant and Harris were the initial aggressors at the police station, which negated their affirmative defenses.  The court granted the State's motion, noting that the videos were relevant to show the context of the altercation at the police station.

¶ 6    The court also allowed evidence, for the purposes of identification, intent, motive, and knowledge, that defendant was involved in a previous altercation with Perez and Castelan at a Carpentersville McDonald's in which defendant allegedly threw a pop can at Castelan's vehicle,

threw a water bottle at Perez, and got in a fight with Perez. Defendant does not raise any allegations of error about that evidence on appeal.

¶ 7    At trial, evidence of the Cherokee Road incident was admitted over objection. Castelan testified that, as he was driving his vehicle, he saw Harris walking with another man on Cherokee Road. Harris was in the middle of the street talking on a cell phone. The other man approached Castelan's vehicle, yelling at him and hitting the window. Several other vehicles arrived, and people whom Castelan did not recognize began hitting his vehicle with a hammer. Harris did not approach Castelan's vehicle, and Castelan did not see him among the people who were hitting it. He also did not see defendant at the scene.

¶ 8    A 911 call was made and the police arrived, and Castelan and Perez went to the police station to give a written statement. They were met by Castelan's mother. After giving the statement, they were escorted to their cars and they waited while the escorting officer left to confront people who were yelling in front of the police station. According to Castelan, while they were waiting, a truck drove up, blocking them from their vehicles, and Harris rolled down the window and started to say something. Defendant then got out of the truck, said something to Perez, and pushed her. The women began pushing and shoving each other. Castelan unsuccessfully tried to break up the fight, and he felt himself being punched in the back of the head and put in a choke hold. Defendant bit him. Someone sprayed pepper spray, and the police arrived and broke up the fight.

¶ 9    Perez, who was a passenger in Castelan's vehicle at the Cherokee Road incident, testified that she saw two men walking on Cherokee Road and that Harris approached the vehicle and pounded on her window, telling her to get out and that "they were going to—." The trial court stopped the testimony *sua sponte*, the jury was taken out, and the court asked the State why the

testimony about Harris approaching and hitting the vehicle was not presented in the motion *in limine*. The State said that the testimony was unanticipated and unintended. The court expressed concern about the testimony, noting that "[t]he cat is out of the bag," and held that the offending portion would be stricken. Both defendant and Harris moved for a mistrial. In denying the motion, the court stated that it would give a very harsh limiting instruction that the jury disregard any and all testimony about the actions of defendant and Harris at Cherokee Road, but would allow Perez to testify that she saw Harris talking on his phone there. The jury was brought back in and instructed as follows:

> "Ladies and gentlemen, you just recently heard some evidence in relation to [Harris]. You are to strike that evidence from your memory. You are not to consider it in any way, shape, or form in arriving at your verdict on [Harris]. The evidence you heard was not appropriately presented, and it will not be used by you in any way, shape, or form.
>
> [Harris] is not charged with anything in relation to what happened on Cherokee [Road] on that evening, and he is not [to] be considered charged and/or committing any offenses on Cherokee [Road] that evening. Therefore, you shall not consider it."

Perez then testified that she saw Harris on Cherokee Road with a cell phone to his ear.

¶ 10    As to the altercation at the police station, Perez testified that defendant got out of the truck yelling, swearing, and saying " '[i]t's not over.' " Defendant tried to grab her hair, they struggled, and someone, who she believed was defendant, sprayed pepper spray in her face. Perez testified that the altercation continued, and that defendant kept coming after her. Defendant bit her arm and scratched her. Perez saw Harris and Castelan in an altercation at the same time.

¶ 11    Castelan's mother testified that, when the truck pulled up, Harris said "it's not over" and " '[s]ay something, say something.' " Defendant then got out of the truck, yelling at Perez, and

Castelan tried to get between them. Defendant bit Castelan, and Harris got out of the truck and came at Castelan, telling him to get his hands off of defendant. Harris punched Castelan multiple times and put him in a choke hold.

¶ 12    Officer Carlos Gonzalez testified that he was at the Cherokee Road incident, where a crowd had gathered and three juveniles, two of whom were in defendant's family, were arrested. Gonzalez identified the YouTube videos, stating that he was present when they were made. Over objection, the videos were played for the jury. Those videos depict multiple police officers standing near several vehicles and people yelling. The person filming the videos expresses anger at the police for making the arrests but letting Castelan leave. The court instructed the jury that the evidence could be considered only for the limited purpose of showing presence at Cherokee Road and knowledge of the arrests.

¶ 13    Gonzalez testified that he escorted Castelan, Perez, and Castelan's mother out of the police station and then left to talk to Harris, who had been yelling "snitch." Gonzalez asked Harris, defendant, and those with them to leave. Shortly after, Gonzalez was dispatched to a fight in the parking lot, where defendant and Harris were arrested. Defendant was visibly pregnant.

¶ 14    Harris's son testified that he went with defendant and other family members to pick up relatives who had been arrested on Cherokee Road. He said that Castelan, with the help of Perez, opened the door to the truck and pulled defendant from the truck. Harris then got out of the truck to try to help defendant. Defendant's aunt, who filmed the videos at the Cherokee Road incident and was present at the police station, gave similar testimony. Defendant's mother was also at the police station and testified that Castelan and Perez were the aggressors in the incident.

¶ 15    Harris testified that he went to the police station to show support and pick up family members. As they were leaving the police station, the back door of the truck was yanked open,

and Castelan, Perez, and perhaps a third person surrounded defendant and hit and kicked her. Harris jumped out of the truck and restrained Castelan. Harris testified that he intervened to protect defendant because she was pregnant and the others were trying to kill her. He felt that he had to save his daughter.

¶ 16    Defendant testified that she was pregnant at the time of the incidents. She denied being the aggressor in any of the incidents, alleging instead that Perez was the aggressor. She stated that, at the police station, Perez and Castelan opened the door of the vehicle, pulled her out by the neck and hair, and punched and kicked her in the stomach. She said that she bit them in an unsuccessful attempt to stop them. She felt pain in her stomach and had to be taken to the hospital.

¶ 17    During closing arguments, the court sustained an objection to the State's argument asking the jury to decide who were the aggressors based on the circumstances, the videos, and the demeanors of the depicted participants. The jury found defendant guilty, her motion for a new trial was denied, and she was sentenced to 24 months of probation. She appeals.

¶ 18                                II. ANALYSIS

¶ 19    Defendant first contends that the trial court erred in admitting the YouTube videos into evidence, because she only briefly appeared in them and was not depicted as taking part in the altercation. She argues that they were thus irrelevant. The State argues that the videos were relevant as a continuing narrative to show defendant's knowledge of the arrests, which in turn was relevant to her motive and state of mind in relation to her affirmative defense.

¶ 20    Evidence is admissible when it is relevant to an issue and its probative value is not substantially outweighed by its prejudicial effect. *People v. Gonzalez*, 142 Ill. 2d 481, 487 (1991). Evidence is relevant if it has any tendency to make the existence of any fact that is consequential to the determination of an action either more or less probable than it would be without the evidence.

Ill. R. Evid. 401 (eff. Jan. 1, 2011). We review evidentiary rulings for an abuse of discretion. *People v. Thompson*, 2013 IL App (1st) 113105, ¶ 100.

¶ 21 Here, the videos were relevant to show that defendant was aware of the arrests and to provide context about her motive and state of mind when she went to the police station. As the trial court noted, the videos did not portray any bad act by defendant. However, coupled with the other evidence, they provided further context to the animosity between defendant and Perez, showed that defendant was at the scene of the Cherokee Road incident, and showed that her family was angry about the arrests and angry that Castelan was allowed to leave. They thus helped to explain why defendant went to the police station. That is, they provided a continuing narrative of events earlier in the evening that were intertwined with the incident at the police station. They then also helped provide a motive for committing the charged offenses.

¶ 22 The videos were further relevant to defendant's state of mind in relation to her affirmative defense and the jury's determination of whether she was actually the aggressor in the incident, although they were not admitted specifically for that purpose. A defendant may not claim self-defense or defense of others when the perilous situation she encountered arose from her own aggressive conduct. *People v. White*, 293 Ill. App. 3d 335, 338 (1997). By raising the defense, the defendant places her mental state in controversy, as the defense necessarily involves the question of the defendant's subjective belief and intent at the time of the incident. See *Thompson v. Petit*, 294 Ill. App. 3d 1029 (1998) (discussing self-defense in a civil case).

¶ 23 Here, the videos provided context as to why defendant might have been angry with Castelan and Perez, which was relevant to defendant's subjective belief and intent when she was at the police station. Accordingly, the trial court did not abuse its discretion in admitting the videos into evidence.

¶ 24    Defendant also contends that the videos misled the jury because they did not show that she was involved in any improper acts in the Cherokee Road incident. But, as noted, they were relevant for other purposes. The weight to be given to the videos in determining issues such as defendant's motive, intent, knowledge, or assertion of self-defense, when they did not show defendant engaged in any improper act, was a matter for the jury.

¶ 25    Defendant next contends that the trial court erred in denying her motion for a mistrial after Perez unexpectedly testified that Harris pounded on the window of Castelan's vehicle at the Cherokee Road incident. Defendant concedes that she did not properly preserve this issue for review, because she failed to raise it in her posttrial motion. However, she asks that we review it for plain error.

¶ 26    In order to preserve an issue for review, a defendant must both offer a specific objection at trial and raise the matter in a posttrial motion. *People v. Enoch*, 122 Ill. 2d 176, 186 (1988). However, the plain-error doctrine allows courts to consider forfeited issues when (1) a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error, or (2) the error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence. *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007). Under both prongs, the defendant bears the burden of persuasion. *People v. Hillier*, 237 Ill. 2d 539, 545 (2010). The first step in conducting a plain-error analysis is determining whether an error occurred at all. *People v. Walker*, 232 Ill. 2d 113, 124 (2009).

¶ 27    "The decision to declare a mistrial rests within the discretion of the trial court and will not be disturbed on review unless there has been an abuse of discretion." *People v. Wills*, 153 Ill. App. 3d 328, 339 (1987). "To prevail on appeal, [the] defendant must establish that there was a manifest

necessity for the mistrial or that the ends of justice would be defeated by continuance of the trial; that is, that the jury was so influenced and prejudiced that it would not, or could not, be fair and impartial, and the damaging effect of the evidence could not be remedied by admonitions or instructions." *Id.* at 339-40. "An improper remark will not result in reversal unless it appears that the guilty finding was the result of the error." *People v. Brooks*, 172 Ill. App. 3d 417, 422 (1988). "A prompt objection, sustaining of the objection, and instruction to disregard the testimony generally cures any potential prejudice." *Id.*

¶ 28   Here, the remark implicated Harris instead of defendant. Further, the court promptly gave the jury a strongly worded curative instruction that it should disregard the testimony. The jury is presumed to have followed that instruction. See *People v. Taylor*, 166 Ill. 2d 414, 438 (1995). Thus, it does not appear that the guilty finding was the result of the remark such that the court abused its discretion in denying the motion for a mistrial. Accordingly, there was no plain error.

¶ 29   Defendant next argues that the State inappropriately remarked on the demeanors of the people in the videos during closing argument. She again concedes that she did not preserve the matter for review but argues that plain error applies.

¶ 30   "Prosecutors are afforded wide latitude in closing argument." *People v. Wheeler*, 226 Ill. 2d 92, 123 (2007). In reviewing comments made in closing argument, we ask whether the comments engendered substantial prejudice against the defendant such that it is impossible to say whether a verdict of guilt resulted from them. *Id.* Improper comment is plain error only when it is either so inflammatory that the defendant could not have received a fair trial or so flagrant as to threaten a deterioration of the judicial process. *People v. Burman*, 2013 IL App (2d) 110807, ¶ 45. "[T]he closing arguments of both the State and the defendant must be examined in their entirety and the comments complained of must be placed in their proper context." *People v. Rush*, 294 Ill.

App. 3d 334, 340 (1998). The prosecutor has a right to comment upon the evidence presented and make any reasonable inferences arising from it, even if those inferences are unfavorable to the defendant. *Id*. at 340-41. A prosecutor may also respond to comments that invite a response. *People v. Hall*, 194 Ill. 2d 305, 346 (2000). A trial court's sustaining of an objection to improper argument is generally sufficient to cure the error. *People v. Arman*, 131 Ill. 2d 115, 127 (1989). Further, "if the trial court instructs the jury that closing arguments are not evidence, any error resulting from the prosecutor's remarks is considered cured." *Rush*, 294 Ill. App. 3d at 341.

¶ 31    Here, the remark complained of represented a small portion of the overall argument and in context was arguably a permissible comment rebutting defendant's claim of self-defense. In any event, the trial court sustained the objection to the comment, and the jury was instructed that closing arguments are not evidence. There was no plain error.

¶ 32    Defendant next contends that her conviction of mob action must be vacated based on the one-act, one-crime rule. She argues that her convictions arose from a single act and that there was no apportionment of the charges among her acts of striking, pushing, and biting Perez. As with the other arguments, defendant did not raise this issue in the trial court and argues that plain error applies.

> "Analysis under the one-act, one-crime doctrine involves two steps: determining (1) whether the defendant's conduct involved a single act (in which case multiple convictions are improper) or multiple acts, and, (2) if multiple acts, whether any of the offenses were lesser included offenses (in which case multiple convictions are improper)." *People v. Stanford*, 2011 IL App (2d) 090420, ¶ 33.

Defendant does not argue that a lesser-included-offense analysis applies and instead argues only that the conduct was a single physical act.

¶ 33    The definition of an "act" is "any overt or outward manifestation which will support a different offense." *People v. King*, 66 Ill. 2d 551, 566 (1977). "Under the one-act, one-crime rule, multiple convictions may not be based on the same physical act." *People v. King*, 2017 IL App (1st) 142297, ¶ 22 (citing *King*, 66 Ill. 2d at 566).

¶ 34    Multiple strikes, despite being closely related, are not one physical act and may support multiple convictions. *People v. Jimerson*, 404 Ill. App. 3d 621, 637 (2010). In *Jimerson*, the First District affirmed the defendant's convictions of aggravated battery and mob action based on evidence that the defendant struck the victim multiple times, held onto the victim, and made verbal remarks inciting the situation. *Id.* at 637. The supreme court held similarly in *People v. Dixon*, 91 Ill. 2d 346 (1982), where convictions of aggravated battery and mob action were affirmed based on evidence that the defendant and a codefendant struck a victim several times. The supreme court stated that the "separate blows, even though closely related, were not one physical act." *Id.* at 356.

¶ 35    Here, the charges differentiated between acts of aggravated battery, in that defendant pushed and bit Perez, and of mob action, in that defendant struck Perez in cooperation with Harris. Those separate acts supported the multiple convictions.

¶ 36    Finally, defendant argues that reversal is required based on the cumulative effect of the trial court errors. As no error occurred in any respect, cumulative error does not apply.

¶ 37                                    III. CONCLUSION

¶ 38    For the reasons stated, the judgment of the circuit court of Kane County is affirmed.

¶ 39    Affirmed.