THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. WILLIE ROACH, Defendant-Appellant.

Third District  No. 3—89—0656

Opinion filed April 30, 1991.

Joseph N. Ehmann, of State Appellate Defender's Office, of Ottawa, for appellant.

Edward Burmila, Jr., State's Attorney, of Joliet (Jay P. Hoffman and John X. Breslin, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE SLATER delivered the opinion of the court:

The defendant, Willie Roach, appeals his convictions for first degree murder and aggravated battery (Ill. Rev. Stat. 1989, ch. 38, pars. 9—1(a)(2), 12—4(b)(1)). The sole issue on appeal is whether the prosecutor committed reversible error in his closing argument. We reverse.

According to the record, Henry Tyler testified that on May 28, 1987, around 9:45 p.m., he was riding in a car with Leonard Tyler, Greg Harris, and Vorline Moffett. Leonard was driving, and Henry sat in the front passenger seat. As they proceeded down Iowa Street in Joliet, a car attempted to pass them on the right. The car, which Henry described as a cream-colored Oldsmobile 98 with a dark top, struck their car in the right rear and front panels and caused it to stall. Leonard restarted the car and pulled alongside the other car, which had stopped at an intersection. Henry was about four feet from the other car, and the windows of both cars were open.

Henry testified that while the cars were stopped, Leonard asked the driver of the other car, "What the fuck up?" The driver did not respond but simply looked at them three times. He then pulled out a gun and fired several shots at them in rapid succession. Henry ducked down to avoid the shots. When he sat up, he discovered that he had been wounded in the shoulder and Leonard had been shot.

Henry identified the defendant as the man in the other car. Although he did not know the defendant's name at that time, he had seen him on about six occasions prior to the shooting. In one of those instances, they had briefly spoken while they were in a tavern.

On the evening of the shooting, Henry told the police that he could recognize the shooter. When he was shown a series of photos, he picked out a picture of someone other than the defendant and said it resembled the shooter. A few days later, he examined another photo array. At that time, he identified a photo of the defendant as the shooter.

Vorline Moffett and Greg Harris generally corroborated Tyler's testimony about the occurrence. However, Moffett testified that although she knew the defendant prior to the shooting, she could not identify him as the shooter. Harris also stated that he could not identify the shooter.

A physician testified that Leonard Tyler died that evening of a gunshot wound in the area of the heart.

Officer Ruben Coronado testified that he spoke to Henry on the night of the shooting. Henry told him that he recognized the gunman as someone he had seen in a tavern and had spoken to a couple of times. Henry described the defendant as being 5 feet 7 inches, but Coronado said the defendant was actually 5 feet 11 inches. Coronado also corroborated Henry's testimony about his selection of photographs from the photo arrays. Lastly, Coronado said that a check of the Secretary of State's records revealed that no vehicles matching the witnesses' description were registered in the defendant's name.

Timothy Traver, the maintenance man at the defendant's apartment complex, testified that on May 29, 1987, the defendant asked him if anyone had been looking for him. He told Traver to tell anyone who inquired that he had never owned a car. Traver said that the defendant drove an older, cream-colored Buick or Oldsmobile, but he never saw him drive it after their conversation. Traver acknowledged that he had a previous conviction for rape.

The defendant testified that he did not own a car at the time of the shooting and the last car he owned was a 1982 Granada. On May 28, around 7 or 7:30 p.m., Walter Houston gave him a ride to the Oasis Tavern. The defendant did not leave until sometime between 10:40 and 11:15 p.m. He was driven home by Hank Jenkins, who died of a stroke prior to trial.

The defendant denied taking part in the shooting and said he did not own a gun. He also denied telling Traver to tell anyone that he did not own a car.

Walter Houston testified that around 6:30 or 7 p.m. on the night of the incident, he drove the defendant to the Oasis Tavern. He also stated that in the eight years he had known the defendant, the only car the defendant owned was a white Grenada in 1984.

Paul Dickerson testified that he tended bar at the Oasis on May 28, 1987. The defendant came into the bar between 7 and 8 p.m. and left between 11 and 11:30 p.m. Dickerson admitted that he told the police that he had given the defendant a ride home, although he had not actually done so. He explained that he had been questioned approximately a year after the incident, he had no idea what the police were talking about, and he did not know the defendant was in trouble. He also stated that at the time of the incident, the defendant did not own a car.

Following closing arguments, the jury retired to deliberate around 2:30 p.m. At 10:30 p.m., the jurors informed the court that they could not make a decision. The court responded with a *Prim* instruction (*Peo-*

*ple v. Prim* (1972), 53 Ill. 2d 62, 289 N.E.2d 601). At 2:30 a.m., the jury found the defendant guilty of the murder of Leonard Tyler and the aggravated battery of Henry Tyler.

Following a sentencing hearing, the court imposed concurrent terms of 20 years for murder and five years for aggravated battery.

On appeal, the defendant first contends that during closing arguments the prosecutor improperly stated his personal opinion regarding the witnesses' credibility. Specifically, he objects to the following remarks:

"We knew that Willie Roach was presumed innocent the day he walked into this courtroom. We knew it the day that the Grand Jury charged this case. We know it now, and we accept that challenge.

\* \* \*

Again, we accepted that challenge and we think that Willie Roach has been proven guilty beyond any reasonable doubt.

\* \* \*

Henry, when he testified, he told you about how he goes to see his mother every night. Well, to me, whether he sees her every night or not, to me it tells you that Henry is a family man, and I just got a feeling that he was sincere. That's all. Instead of saying to you, 'What the fuck up,' he said, 'What the F up.' And to me he just looks sincere. Okay? The same goes for Vorline. The same goes for Greg Harris.

Every one of these police officers, I mean, it is their job to investigate a murder, and what they do is they go out every day and they do their job and they—I think they were sincere.

\* \* \*

I'm sure that Mr. Loughran is going to make a big deal about a Felony conviction that Tim Traver had. Well, sure he had a Felony conviction. Does that mean he is a liar? I didn't get the feeling when he was on the witness stand that he was a liar. You know, maybe you don't want your daughter going out with him or something, but I just didn't get the feeling that he was a liar.

\* \* \*

One of the first things you heard out of Paul Dickerson's mouth was how he lied to Detective Coronado. Well, as soon as he told us that, I got this feeling in my stomach that I just—I can't buy anything he says when he tells me he is a—that he lied to Detective Coronado once before.

\* \* \*

I got this feeling in my stomach as soon as he said he lied to

Detective Coronado. I couldn't believe a word he said after that because not only that, but what if he is off by an hour?

\* \* \*

And then we come to the testimony of Willie Roach. I had that feeling in my stomach again when Willie Roach testified because to me what Willie was doing when he got on the witness stand is he did his best to convey that he's a good old guy from Mississippi. You know what he didn't strike me as? He didn't strike me as a guy who's being wrongfully accused of a murder that he didn't do. He didn't strike me as a guy who is standing here saying, 'I was someplace else, I wasn't there.'

\* \* \*

Well, like I said, myself and Mr. McCabe have no doubt that Willie Roach was at the Oasis on May 28, 1987. But \*\*\* Willie Roach ended up with his Olds 98 that night."

■■ ■ The defendant did not object to the comments, nor did he raise them in his post-trial motion. Ordinarily, he must do both to preserve an issue for review. (*People v. Enoch* (1988), 122 Ill. 2d 176, 522 N.E.2d 1124.) However, we will still consider the comments to determine whether plain error occurred. 134 Ill. 2d R. 615(a); *People v. Mullen* (1990), 141 Ill. 2d 394, 566 N.E.2d 222.

■■ We begin our analysis by noting that the prosecutor, as the representative of the State of Illinois, stands in a special relation to the jury. He must therefore choose his words carefully so that he does not place the authority of his office behind the credibility of his witnesses. (*People v. Valdery* (1978), 65 Ill. App. 3d 375, 381 N.E.2d 1217.) He may express an opinion if it is based on the record. (*People v. Johnson* (1987), 119 Ill. 2d 119, 518 N.E.2d 100.) He may not, however, state his personal opinion regarding the veracity of a witness or vouch for a witness' credibility. *People v. Wilson* (1990), 199 Ill. App. 3d 792, 557 N.E.2d 571.

■■ ■ The State argues that the prosecutor's opinions were not prejudicial because they were based on the record. It also points out that both the prosecutor and the trial court informed the jury that closing arguments were not evidence. However, we find the State's arguments to be unavailing. Here, the prosecutor clearly and repeatedly stated his personal feelings about the witnesses' credibility. Most of his opinions were not based on the record. Rather, they were the sort of intuitive judgments that lie within the province of the jury. This form of argument has been repeatedly condemned. (*Wilson*, 199 Ill. App. 3d at 795-96, 557 N.E.2d at 573-74; *Valdery*, 65 Ill. App. 3d at 378, 381 N.E.2d at 1219-20.) We therefore find the comments to be error.

The remaining question is whether the comments constituted plain error. Plain error occurs where the error adversely affected the defendant's right to a fair trial or the evidence was closely balanced. *Mullen*, 141 Ill. 2d at 401-02, 566 N.E.2d at 226.

Given the large number of comments, we find it unnecessary to assess the prejudicial impact of each one. Rather, we find that their cumulative effect deprived the defendant of a fair trial. (See *People v. Johnson* (1986), 149 Ill. App. 3d 465, 500 N.E.2d 728.) We also find that the evidence in this case was closely balanced. The State's case was largely based on the identification by Henry Tyler, who testified that he briefly saw the defendant prior to the shooting. The defendant and two other witnesses testified to an alibi, and there was no physical evidence linking him to the crime. Based on the foregoing, we hold that the comments were plain error.

The defendant also contends that the prosecutor misstated the law regarding the burden of proof. Specifically, he objects to the following statement:

> "If you find that Henry Tyler is a liar, he has a reason to lie, then you should find Willie Roach not guilty. But if you find that there is absolutely no reason for Mr. Tyler to lie and that this man lied, that his witnesses lied, don't be afraid to sign that guilty verdict, and I would ask that you do that."

The correct standard for a jury's consideration of the evidence "is not whether one side is more believable, but whether, taking all of the evidence into consideration, guilt as to every essential element of the charge has been proven beyond a reasonable doubt." (*Wilson*, 199 Ill. App. 3d at 797, 557 N.E.2d at 574.) Since the prosecutor's statement implied that the jury could reach a verdict simply by balancing the testimonies of each side's witnesses, we find that it was error. Taken with the other comments in this case, it strengthens the conclusion that this cause must be reversed on the grounds that the defendant did not receive a fair trial.

The judgment of the circuit court of Will County is reversed, and the cause is remanded for further proceedings consistent with this opinion.

Reversed and remanded.

GORMAN and McCUSKEY, JJ., concur.