2020 IL App (1st) 173094-U

FOURTH DIVISION
June 30, 2020

No. 1-17-3094

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE APPELLATE COURT
OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Cook County |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 15 CR 12746 |
| GLEN PHILLIPS, | ) ) | |
| Defendant-Appellant, | ) ) ) ) | Honorable Alfredo Maldonado, Judge Presiding. |

_____

JUSTICE REYES delivered the judgment of the court.
Presiding Justice Gordon and Justice Lampkin concurred in the judgment.

**ORDER**

¶ 1    *Held*:   Affirming the judgment of the circuit court of Cook County where: (1) the trial court did not abuse its discretion when it declined to declare a mistrial; (2) certain remarks made by the prosecutor did not constitute error and, even if they did, did not rise to the level of plain error requiring reversal; (3) the evidence was sufficient to find defendant guilty beyond a reasonable doubt of two counts of aggravated discharge of a firearm; and (4) the one-act, one-crime doctrine was not violated.

¶ 2    Following a jury trial, defendant Glen Phillips was found guilty of two counts of the first

degree murder of Eddie Jones and two counts of aggravated discharge of a firearm. The jury also specially found that defendant personally discharged a firearm that resulted in Eddie's death. The trial court merged the two counts of first degree murder and sentenced defendant to 30 years' imprisonment in the Illinois Department of Corrections plus a 25-year firearm enhancement. The trial court further sentenced defendant to 10 years' imprisonment on each count of aggravated discharge of a firearm to run concurrent to each other and consecutive to the sentence for murder. On appeal, defendant raises four contentions: (1) the trial court abused its discretion when it failed to declare a mistrial after the State violated a motion *in limine* during the trial; (2) the prosecutor's statements during closing argument and rebuttal argument denied him a fair trial; (3) the evidence was insufficient to find him guilty of aggravated discharge of a firearm; and (4) one of the two convictions for aggravated discharge of a firearm should be vacated because they are based on the same gunshot. For the reasons which follow, we affirm the judgment of the trial court.

¶ 3                                     BACKGROUND

¶ 4     Defendant was charged by indictment with multiple counts of first degree murder and aggravated discharge of a firearm based on the allegation that on June 25, 2014, defendant knowingly shot Eddie with a firearm, killing him. The allegations further indicated that defendant knowingly shot into a vehicle that was occupied by two individuals: Quinton Neely and Annette Walton. The State then proceeded to trial on two counts of first degree murder (720 ILCS 5/9-1(a)(1), (a)(2) (West 2014)) and two counts of aggravated discharge of a firearm (720 ILCS 5/24-1.2(a)(2) (West 2014)).

¶ 5                                      Pretrial

¶ 6     Prior to trial, the parties discussed motions *in limine*. Particularly relevant to this case,

was defendant's request to bar any reference to a "drug debt" the victim owed to defendant. The prosecutor asserted Merle Jones[1] would testify that he heard defendant say, "Where's my money?" but that she would not be inquiring as to why the money was owed. The trial court then granted the motion *in limine* to exclude any reference to a drug debt, but explicitly allowed the State to present testimony that Eddie owed a financial obligation to defendant.

¶ 7                                  Trial

¶ 8     Donald Jones, the victim's brother, testified that on June 25, 2014, he was with Eddie an hour before he was murdered, and that Eddie was in good health at that time. Donald further testified that later evening he learned his brother had been shot and killed. Thereafter, Donald spoke with Neely and Red Singletary about the shooting and contacted the detectives who were investigating the murder.

¶ 9     Annette Walton testified that on June 25, 2014, she was in a romantic relationship with Eddie. That day, Eddie had come to Walton's home to celebrate her birthday. That evening, around 9 p.m. they left her house with Neely and drove to a liquor store where they purchased a small bottle of brandy. At this time, Eddie was driving Walton's vehicle and she was in the front passenger seat and Neely was seated directly behind her. As they drove the three passed the brandy around in the vehicle. She did not become intoxicated and, to her knowledge, no one was using drugs while in the automobile.

¶ 10    At 10:45 p.m., Eddie drove to the 6500 block of South Sangamon in Chicago. Walton testified she expressed her displeasure for being on this block as it was "loud" and "wild." An individual then indicated to Eddie he wanted to speak with him, so Eddie curbed the vehicle on the left side of the one-way street. Eddie exited the vehicle and spoke with this person on the

---

[1] The record discloses Merle Jones is of no relation to the victim, Eddie Jones.

sidewalk and near the passenger side of the vehicle. Walton described the individual as an African American male, five foot, six inches tall with a slim build. He was wearing a black hoodie with the hood pulled up and she could not view his face. Meanwhile, Walton was reading Facebook on her cell phone and listening to the radio. She could not hear the conversation.

¶ 11    As the noise from outside the vehicle on the block became louder, Walton testified she turned around and expressed to Neely that she wanted Eddie to hurry up so they could leave. Then she heard "a big pop." The man Eddie had been speaking with had a handgun and Eddie was pushing the man away. Walton then observed fire coming out of the handgun and heard "constant shooting." Eddie grabbed his stomach and fell to the ground. Walton then slid into the drivers' seat, closed the drivers' side door, and drove to the corner. Neely told her to let him out at the corner, which she did. Thereafter she drove to 69th and South Sangamon where she called her brother and Eddie's sister. When her family arrived, they took her back to the 6500 block of South Sangamon where she spoke with police officers.

¶ 12    Quinton Neely, the victim's best friend, testified that on June 25, 2014, at 9 p.m. he (along with Walton and Eddie) drove to the liquor store. Eddie was driving with Walton seated in the front passenger seat and he was behind Walton. On the way to the liquor store, Neely was smoking marijuana. After purchasing a half-pint of liquor, Eddie continued driving while they passed the bottle around.

¶ 13    At 10:45 p.m. Eddie drove onto the 6500 block of South Sangamon where he was flagged down by a man Neely knew as "Sluggo." Eddie curbed the vehicle on the left-hand side of the street and exited. Eddie began talking to Sluggo and Neely noticed that Merle, an individual he knew from the neighborhood, was also present. As Eddie spoke with these individuals, Neely

was playing on his cell phone. Then, in his peripheral vision, Neely noticed Merle and Sluggo separate, so he looked up from his phone. Neely testified he observed a person come towards Eddie with a handgun pointed at him. He was African American with a slight build and was about five-foot-six or five-foot-seven. He was dressed in jeans with white shoes and a dark hoodie with the hood up. At that point, Neely could not see the man's face. The man then fired at Eddie. Neely got down inside the vehicle but peeked over the top of the front seat (which was in a reclined position). As he continued watching, Neely observed that Eddie had his hands raised and was walking backward towards the automobile. The man with the firearm also stepped closer to the vehicle. As he did, Neely could view his face and recognized him as a man he knew from the neighborhood as "Skee." Skee continued to shoot Eddie for a total of five to six times. Eddie then grabbed his stomach and fell to the ground. At this point, Skee was within two feet of Neely.

¶ 14    According to Neely's testimony, Walton then started "hollering" and drove off toward the corner at that moment Neely was able to observe defendant raise his firearm and shoot into the vehicle. At the corner, Neely exited the vehicle to go check on Eddie. He was unconscious and bleeding. That evening, Neely provided the police officers with a general description of the shooter but did not reveal his name. The following day, he did not inform the detectives who were investigating the case that he knew the shooter's name because, "I was scared, and I wanted the streets to handle him because he shot my friend." Two weeks later, on July 13, 2014, Neely contacted the police and, during an interview, he provided them with Skee's name. Neely then also identified Skee in a photo array. Neely testified in court that defendant was the individual he knew as Skee and the person he observed shoot Eddie.

¶ 15    On cross-examination, Neely admitted that he was "buzzed, not drunk" and was "high" at

10:45 p.m. on June 25, 2014. Neely further clarified his positioning in the vehicle as he observed the shooting. Neely stated he was "balled up with my head peaking up from over the [drivers'] seat."

¶ 16     Merle Jones testified that he had been convicted of three felonies. He further testified that he had known defendant for approximately 30 years, that defendant's full name was Glen Phillips, and that his nickname was "Skee." Merle then identified defendant in court as the person he knew as "Skee."

¶ 17     Merle testified that on June 25, 2014, at 10 p.m. he was sitting in his vehicle which was parked on the 6500 block of South Sangamon. His uncle, Vincent Singletary and his cousin, Parrish Miles (who went by the nickname "Sluggo"), were outside talking when Eddie came driving up the block. Eddie pulled alongside Merle's vehicle and said, "What's up, nephew? I've been praying for you." Then Eddie parked and exited his vehicle. As Eddie was talking to Parrish, Merle exited his vehicle to join them. At this point, Vincent had returned to his own home. Eddie, Parrish, and Merle spoke for 10-15 minutes. Merle then testified that defendant was not present when the shooting occurred. According to Merle, while he had previously implicated defendant in the murder, he was not telling the truth at that time because he was hoping to obtain a deal from the Cook County assistant state's attorney (ASA) on his own separate felony case.

¶ 18     The prosecutor then impeached Merle with statements he made before the grand jury and on a videotape recorded at the DuPage County jail regarding the present case.

¶ 19     Before the grand jury, Merle testified that while Parrish and Eddie were talking, defendant walked down the street and came up to them. Defendant was wearing a hoodie. Defendant asked Eddie about some money that Eddie owed him. Eddie told defendant, "I got

you" and then defendant, who had a firearm in his hand, took a swing at Eddie. Eddie moved to block it and then defendant shot him in the leg. Defendant continued to shoot Eddie five more times. At trial, Merle testified he recalled giving this testimony.

¶ 20    Regarding the videotape recorded in DuPage County, Merle testified he recalled making all the statements therein which identified defendant as the shooter. In the videotape, which was admitted into evidence and published to the jury, Merle tells the detectives that as he was talking with Eddie and Parrish, defendant walked out and asked Eddie about the money Eddie owed him. Eddie informed defendant that he did not have the money at the moment but he would get it to him. Defendant then tried to hit Eddie with a pistol and Eddie moved to block it. Defendant then shot the victim in the leg and continued shooting.

¶ 21    The prosecutor played portions of the videotape. During one portion, Merle stated defendant asked the victim about money Eddie owed defendant. The Cook County ASA interviewing Merle at the DuPage County jail asked if he knew what defendant was talking about when he asked Eddie about the money. In the video clip Merle stated: "No, I didn't know, but I can just assume, you know, from the streets, you know, I ain't know something but it was for some dope or some shit." Defense counsel immediately objected to the video clip without stating a basis for the objection. The trial court sustained the objection and initiated a sidebar with counsel. Defense counsel argued that playing this unedited video clip to the jury violated the motion *in limine* which prohibited the prosecution from referencing that Eddie owed defendant a drug debt. The trial court agreed that the motion *in limine* had been violated. Defense counsel then moved for a mistrial arguing that the violation of the motion *in limine* was highly prejudicial. The trial court denied the motion for a mistrial and instead concluded the proper remedy was to admonish the jury to disregard the portion of the video that was just played

and allow the prosecution to present an edited version of the video. The trial court instructed the jury to "disregard in its entirety the video clip that was last played. You are to disregard it in its entirety."

¶ 22    On cross-examination, Merle testified he was under the influence of marijuana, ecstasy, and cocaine at the time of the shooting. He further testified that he initially informed detectives that he was not present when the shooting occurred. Merle also offered the conflicting testimony that he told the truth to the detectives, but that he was also exaggerating. According to Merle, he did not receive a deal from the State for his testimony, but that the detectives and Cook County ASA led him to believe he would get a deal.

¶ 23    Lisa Longo, a former Cook County ASA, testified that she took the statement from Merle at the DuPage County jail on January 10, 2015. Neither she nor the detectives made any promises to Merle to obtain his statement.

¶ 24    Jennifer Cooper, a Cook County ASA, testified that she presented Merle to the grand jury on July 14, 2015. Cooper testified that Merle informed the grand jury that while he was at his girlfriend's house, he and Sluggo discussed the shooting. Merle further informed the grand jury that defendant called him after the shooting and Merle asked defendant why he shot Eddie. Defendant told Merle to stick to the "G-code," which meant not to say anything. According to Cooper, she did not make any promises to Merle about his pending cases or lead him to believe that he would receive assistance on those cases.

¶ 25    Detective William Sullivan of the Chicago Police Department testified that on June 25, 2014, at 10:45 p.m. he and his partner Detective Michelle Moore-Grose were assigned to this case. They went to the scene where Eddie was lying on the ground. Neely, who was present when they arrived, was interviewed by the detectives. Later, Walton returned to the scene and

she was also interviewed. Walton then accompanied the detectives to her vehicle. A few days later, during their investigation, Detective Sullivan spoke with Donald and learned the suspect's name was Glen Phillips. Separately, a sergeant from the 7th District spoke with Detective Sullivan and, following that conversation, Detective Sullivan commenced looking for defendant.

¶ 26 On July 13, 2014, Detective Sullivan presented Neely with a photo array and Neely identified defendant within that photo array. Neely also informed Detective Sullivan that defendant was known by the nickname "Skee." Detective Sullivan further testified that on January 8, 2015, the DuPage County Sheriff's Office contacted him on Merle's behalf. Detective Sullivan's testimony about Merle's videotaped statement was consistent with the videotape played to the jury. According to Detective Sullivan, he made no promises to Merle. Detective Sullivan then contacted the Cook County State's Attorney's Office and ASA Longo arrived to interview Merle in his presence. Detective Sullivan testified that ASA Longo made no promises to Merle in exchange for his statement. Merle then made the same statements to ASA Longo as he made to Detective Sullivan. She asked if Merle could repeat his statement on videotape and Merle agreed.

¶ 27 Detective Abdalla Abuzanat of the Chicago Police Department testified that on June 25, 2014, he was an evidence technician who processed the crime scene. He recovered five fired shell casings, a cell phone, a baseball cap, and a fired bullet.

¶ 28 The parties then presented three stipulations. The first was from Dr. Benjamin Soriano, an assistant medical examiner from the Cook County Office of the Medical Examiner and an expert in the field of forensic pathology. Dr. Soriano, if called, would testify that he performed a postmortem examination on the remains of Eddie and that the manner of death was homicide. He would testify that bullets and bullet fragments were recovered from the victim's body and

that Eddie died as a result of multiple gunshot wounds to the head, neck, and thighs.

¶ 29    The second stipulation was regarding Elizabeth Dawson, an officer of the Chicago Police Department, who, if called, would testify that she is a forensic scientist and an expert in firearms identification. She received two fired bullet fragments recovered from Eddie's body and the bullet recovered from the scene of the offense. According to Dawson, the three fired bullets were fired from the same 9mm firearm.

¶ 30    The final stipulation was from Chicago police officer Timothy Karn, an expert in firearms and tool mark identification, who, if called, would testify that he analyzed the five shell casings from the scene and determined that all of these casing were fired from the same firearm.

¶ 31    Chicago Police Officer Elizabeth Healy testified before the jury as an expert in firearms identification. According to Healy, the three recovered bullets were fired from the same 9mm firearm.

¶ 32    At the close of its case, the State admitted its exhibits and formally rested. Defense counsel moved for a directed verdict, which was denied. The defense then rested without presenting any evidence.

¶ 33    Prior to and during closing argument, the trial judge instructed the jury that the statements made by counsel were not evidence.[2] The State then argued the evidence was sufficient to convict defendant of murder and aggravated discharge of a firearm beyond a reasonable doubt. In response, defense counsel set forth a theory that Donald was the mastermind behind naming defendant as the shooter and that the evidence was insufficient to convict defendant where the witnesses were not believable and there was no corroborating

---

[2] We observe that on appeal defendant maintains that several comments made by the prosecutor during closing argument and rebuttal were improper and denied him a fair trial. Due to the length and numerosity of those comments, we will set them forth in full in the analysis section.

physical evidence. In rebuttal, the State stressed the credibility of the witnesses and the consistencies in their testimonies.

¶ 34    After the jury was instructed, it deliberated and ultimately found defendant guilty of two counts of first degree murder and two counts of aggravated discharge of a firearm based on defendant firing into a vehicle occupied by Walton and Neely. The jury further specially found that defendant personally discharged a firearm causing Eddie's death. Defendant moved for a new trial, which was denied. Thereafter, the matter proceeded to a sentencing hearing. After hearing evidence in aggravation and mitigation, the trial court merged the two first degree murder counts and sentenced defendant to 30 years' imprisonment plus a 25-year mandatory firearm enhancement. The trial court further sentenced defendant to 10 years' imprisonment on each count of aggravated discharge of a firearm to run concurrent to each other and consecutive to the sentence for murder. Defendant filed a motion to reconsider his sentence, which the trial court denied. This appeal follows.

¶ 35                                    ANALYSIS

¶ 36    On appeal, defendant raises four contentions: (1) the trial court abused its discretion when it failed to declare a mistrial after the State violated a motion *in limine* during the trial; (2) the prosecutor's statements during closing argument and rebuttal argument denied him a fair trial; (3) the evidence was insufficient to find him guilty of aggravated discharge of a firearm; and (4) one of the two convictions for aggravated discharge of a firearm should be vacated because they are based on the same gunshot. We address each issue in turn.

¶ 37                              Motion for a Mistrial

¶ 38    Defendant's first argument on appeal is that a new trial is warranted due to the violation of the motion *in limine* wherein the State was prohibited from referencing that the victim owed a

"drug debt" to defendant. Defendant maintains that the trial court's curative instructions were not enough where this highly prejudicial, inadmissible evidence provided the only explanation as to why defendant would have shot and killed the victim over a debt. Defendant further contends that this error is not harmless beyond a reasonable doubt.

¶ 39    In response, the State maintains that the trial court did not abuse its discretion when it denied defendant's motion for a mistrial because the violation of the motion *in limine* was not so serious that it defeated the ends of justice by denying defendant a fair trial. The State argues that (1) Merle's statement was based on speculation, (2) the trial court immediately cured the error, and (3) the reference to "dope" was brief and isolated. The State asserts the error was harmless as the evidence in this case was overwhelming.

¶ 40    A violation of a ruling on a motion *in limine* will constitute grounds for a mistrial "only when the violation effectively deprived the defendant of his right to a fair trial." *People v. Phillips*, 383 Ill. App. 3d 521, 547 (2008). "To prevail on appeal, [the] defendant must establish that there was a manifest necessity for the mistrial or that the ends of justice would be defeated by continuance of the trial; that is, that the jury was so influenced and prejudiced that it would not, or could not, be fair and impartial, and the damaging effect of the evidence could not be remedied by admonitions or instructions." *People v. Wills*, 153 Ill. App. 3d 328, 339-40 (1987). "An improper remark will not result in reversal unless it appears that the guilty finding was the result of the error." *People v. Brooks*, 172 Ill. App. 3d 417, 422 (1988). "A prompt objection, sustaining of the objection, and instruction to disregard the testimony generally cures any potential prejudice." *Id.* This court must consider the trial as a whole in determining whether a new trial is necessary. *Id.* "The decision to declare a mistrial rests within the discretion of the trial court and will not be disturbed on review unless there has been an abuse of discretion."

*Wills*, 153 Ill. App. 3d at 339. An abuse of discretion exists only when the trial court's ruling is "arbitrary, fanciful or unreasonable or where no reasonable man would take the view adopted by the trial court." (Internal quotation marks omitted.) *People v. Santos*, 211 Ill. 2d 395, 401 (2004).

¶ 41 A mistrial should be declared only where an error of such magnitude has occurred that the defendant was denied his right to a fair trial and continuing the proceedings would defeat the ends of justice. *People v. Nelson*, 235 Ill. 2d 386, 435 (2009); *People v. Hall*, 194 Ill. 2d 305, 341 (2000). An error of such magnitude did not occur in this case. It is undisputed that the State violated the motion *in limine* when it did not remove the reference to "dope" in Merle's videotaped statement. The remark, however, when viewed in the context of the trial was brief and isolated. See *Brooks*, 172 Ill. App. 3d at 422 (this court must consider the trial as a whole in determining whether a new trial is necessary). Defense counsel also immediately objected to the video clip and the trial court sustained the objection. See *Hall*, 194 Ill. 2d at 342 (a timely, sustained objection and instructing the jury to disregard the testimony can correct this type of error). After admonishing the State for violating the motion *in limine*, the trial court considered the prejudice defendant suffered from the error and weighed it in comparison with the evidence that had already been presented.

¶ 42 As relayed by our supreme court:

"The vital question to be determined is whether the jurors had been influenced and prejudiced to such an extent that they would not, or could not, be fair and impartial. [Citation.] This determination involves the court's consideration of all the facts and circumstances and conjecture regarding the effect that the incompetent information had upon the minds of the jurors, a determination incapable of absolute accuracy or a very

high degree of reliability. Jurors themselves are incapable even of knowing the effect which prejudicial matters have upon their minds. The determination, therefore, must rest in sound judicial discretion to reach an inference, from the facts and circumstances, that a fair trial had or had not been interfered with. The most controlling fact or circumstance to create the inference is the character and nature of the allegedly prejudicial information. Each case must be determined upon its own facts and circumstances. [Citation.]" *People v. Whitehead*, 169 Ill. 2d 355, 402 (1996), *overruled in part on other grounds*, *People v. Coleman*, 183 Ill. 2d 366 (1998).

¶ 43   The trial court determined that it did not have a prejudicial effect to warrant a new trial based on its brevity and the fact the trial court would be giving a curative instruction. We agree with the trial court that this error was not so prejudicial as to be incurable and deny defendant a fair trial. Merle's statement was not dispositive that Eddie owed a drug debt to defendant. Indeed, the language used by Merle indicated it was speculative at best. See *Whitehead*, 169 Ill. 2d at 402 (1996). Thereafter, the trial court promptly gave the jury a strongly worded curative instruction that it should disregard the testimony and the jury is presumed to have followed that instruction. See *Brooks*, 172 Ill. App. 3d at 422 ("A prompt objection, sustaining of the objection, and instruction to disregard the testimony generally cures any potential prejudice."). We decline to find that the trial court's decision was arbitrary, fanciful, or unreasonable considering the circumstances surrounding the playing of the video clip and the evidence presented at trial. See *Brooks*, 172 Ill. App. 3d at 422 ("An improper remark will not result in reversal unless it appears that the guilty finding was the result of the error."). Thus, it does not appear that the guilty finding was the result of the remark such that the court abused its discretion in denying the motion for a mistrial. See *Hall*, 194 Ill. 2d at 342.

¶ 44                          Prosecutorial Misconduct

¶ 45    Defendant next contends that a new trial is warranted due to multiple improper arguments and remarks made by the State during closing and rebuttal argument.  According to defendant, the prosecutor's improper statements had the effect of bolstering the State's contention that defendant was responsible for the shooting and as the evidence was closely balanced, these remarks were sufficient to improperly tip the scales in favor of the State.

¶ 46    In response, the State asserts that the prosecutor's comments did not deny defendant a fair trial because the statements were not improper and, even if they were, any error was harmless because the comments were not a material factor in defendant's conviction.

¶ 47    Prior to addressing this issue, we observe that defendant concedes he did not properly preserve this claim for our review.  Specifically, defendant made only one objection during closing argument and did not raise any issues with the propriety of closing argument in a posttrial motion.  See *People v. Reese*, 2017 IL 120011, ¶ 60 (to properly preserve an issue for review, a timely objection must be made, and the issue must be included with specificity in a posttrial motion).  The plain-error doctrine permits this court to consider an unpreserved error when either (1) a clear or obvious error occurs and the evidence is so closely balanced that the error alone threatens to tip the scales of justice against the defendant, regardless of the seriousness of the error, or (2) a clear and obvious error occurs and that error is so serious that it affects the fairness of the defendant's trial and challenges the integrity of the judicial process, regardless of the closeness of the evidence.  *People v. Piatkowski*, 225 Ill. 2d 551, 564-65 (2007).  The burden of persuasion remains with the defendant under both prongs of the plain-error test.  *People v. Lewis*, 234 Ill. 2d 32, 43 (2009).  The first step of plain-error review is to determine whether any error occurred.  *Id.*

¶ 48    A prosecutor has wide latitude in making a closing argument and is permitted to comment on the evidence and any fair, reasonable inferences it yields. *People v. Glasper*, 234 Ill. 2d 173, 204 (2009). "Closing arguments must be reviewed in their entirety, and the challenged remarks must be viewed in context." *People v. Caffey*, 205 Ill. 2d 52, 131 (2001). Comments made during rebuttal argument are not improper if they were invited by the defense. See *People v. Giraud*, 2011 IL App (1st) 091261, ¶ 43, *aff'd,* 2012 IL 113116. The State "may fairly comment on defense counsel's characterizations of the evidence and may respond in rebuttal to statements of defense counsel that noticeably invite a response." *People v. Willis*, 2013 IL App (1st) 110233, ¶ 110. Improper closing arguments constitute reversible error only when they result in substantial prejudice against a defendant "to the extent that it is impossible to determine whether the jury's verdict was caused by the comments or the evidence." *Caffey*, 205 Ill. 2d at 131. "[C]omments made in closing argument must be considered in the proper context by examining the entire closing arguments of both the State and the defendant." *People v. Kliner*, 185 Ill. 2d 81, 154 (1998).

¶ 49    The parties recognize that there is confusion as to whether the standard of review for the propriety of closing argument is *de novo* or abuse of discretion. *People v. Burman*, 2013 IL App (2d) 110807, ¶ 26 (comparing *People v. Wheeler*, 226 Ill.2d 92 (2007) (*de novo* standard), with *People v. Blue*, 189 Ill. 2d 99 (2000) (abuse-of-discretion standard). Nonetheless, because the result here would be the same under either standard, we need not decide which standard applies. See *Burman*, 2013 IL App (2d) 110807, ¶ 26.

¶ 50                    *Vouching for the Credibility of the Witnesses*

¶ 51    Defendant first maintains, is that the State "repeatedly vouched" for its own witnesses. According to defendant, the prosecutor argued in closing that the jury should believe Merle's

out-of-court statements (those made at the DuPage County jail and before the grand jury) because the detectives he spoke to were able to verify what he told them. Defendant claims that the State essentially argued that the detectives verified that what Merle told them about the shooting was true.

¶ 52    The State maintains that the prosecutor was not vouching for the credibility of the witnesses or the investigation but was instead merely arguing that the prior statements were credible, which is within the bounds of proper argument.

¶ 53    "A prosecutor may express an opinion based on the record, and may draw reasonable inferences from the evidence presented; however, a prosecutor may not vouch for the credibility of a government witness or use the credibility of the State's Attorney's office to bolster a witness's testimony." *People v. Effinger*, 2016 IL App (3d) 140203, ¶ 24. A prosecutor vouching for the credibility of a witness poses the following dangers: (1) such vouching can convey to the jury that there is other evidence known to the prosecutor but not presented to the jury that supports the charges against the defendant, and (2) the opinion of the prosecutor as to the credibility of a witness may cause a juror to trust the State's judgment rather than his or her own assessment of the evidence. *People v. Williams*, 2015 IL App (1st) 122745, ¶ 13.

¶ 54    Here, defendant refers to the following statement in closing argument:

"Another truth detector, Ladies and Gentlemen, is the fact that when you're trying to get a deal, and if he thought he really was going to be getting a deal, what good is it to lie?

If you really want a deal, you're going to be telling the truth.

You know what, if you want the deal, you better come with the goods, *because the Detectives can determine whether or not you have or have not told the truth.*

So, why -- even if he thought he could get a deal. We all know he couldn't, because he was in DuPage custody when he gave that video.

Cook County State's Attorney's Office has no jurisdiction there. Chicago Police Department has no jurisdiction there. He couldn't get that deal; but even if he thought he was being slick and he could, why would he lie about who actually did it?

And why, if he was just looking for a deal, would he add on further information, not just that he saw the shooting, and that he saw Glen Phillips actually commit the shooting; but that Glen Phillips then later called him, and gave him information about the fact that he did do the shooting, and stick to the G code, that statement that Glen makes to him." (Emphasis added.)

¶ 55   Defendant specifically has an issue with the italicized text ("Detectives can determine whether or not you have or have not told the truth") and maintains that with this statement the prosecutor is stating the detectives verified the accuracy of Merle's out-of-court statements. However, when read in context, this argument was made to demonstrate--not that the detectives corroborated Merle's out-of-court statements--but that when Merle made these statements he was telling the truth because he knew that the detectives had the ability to determine whether his statements could get him "a deal." This is a reasonable inference based on the evidence at trial. See *Glasper*, 234 Ill. 2d at 204 (a prosecutor is permitted to comment on the evidence and any inferences it yields). The prosecutor here was merely arguing Merle's testimony was credible, not that it was verified by detectives as true.

¶ 56   In addition, defendant asserts that in rebuttal argument the prosecutor repeatedly offered the jury her own personal opinion on the credibility of Neely's testimony and Merle's videotaped statement. The State denies that the prosecutor explicitly stated her personal views during

rebuttal closing argument and therefore asserts that the remarks were not improper.

¶ 57    The prosecutor, as the representative of the State of Illinois, stands in a special relation to the jury. Prosecutors must therefore choose their words carefully so that they do not place the authority of their office behind the credibility of his witnesses. *People v. Roach*, 213 Ill. App. 3d 119, 124 (1991). The prosecutor may express an opinion if it is based on the record. *Id.* The prosecutor may not, however, state his or her personal opinion regarding the veracity of a witness or vouch for a witness's credibility. *Id.*

¶ 58    Defendant takes issue with the following comments made by the prosecutor in rebuttal. To put these comments in context, the prosecutor was responding to defendant's theory that Donald was the mastermind behind accusing defendant of murdering his brother and convinced Neely to lie to detectives regarding the identity of the shooter:

> "*He* [Neely] *was probably [t]he most sincere person in this case.* He came in here, and he told you the truth. He told you what happened that evening. He was scared. He was crouched down in the back seat of his car when those shots were fired, several shots were fired that night out of nowhere.
>
> And who did he see out there shooting?
>
> He saw this Defendant, a person that he knows. He came in here. He was very emotional when he pointed out the Defendant as the shooter, *extremely sincere*. You saw his credibility, and that brings us to Merle Jones' testimony." (Emphasis added.)

While the second remark was a reference to Neely's demeanor on the stand, the initial comment can be considered more akin to a personal opinion than a comment based on the testimony. This remark, however, did not involve the prosecutor personally vouching for Neely's credibility nor did it take up a large portion of the argument. See *id.* at 125 (finding error occurred where the

prosecutor commented repeatedly on the credibility of the State's own witnesses to bolster their credibility). It was made in passing and in direct reference to defendant's theory that Donald manipulated Neely to lie to detectives and, in turn, on the witness stand. Moreover, the jury was admonished, albeit during defense counsel's closing argument, that personal opinions of counsel are not to be considered. Accordingly, based on the context and limited use of the remark, we conclude that defendant was not substantially prejudiced. See *People v. Nitz*, 143 Ill. 2d 82, 120 (1991) (finding that it is a fair comment for the prosecutor to argue that a witness is believable because of her demeanor while testifying and because her testimony was corroborated).

¶ 59    Defendant next contends that the prosecutor offered similar opinions about Merle's out-of-court identification:

> "And when you guys go back to the Jury room, you'll be able to look at that videotape. You saw the statement when it was played out here in open court, but you saw his statement. *You saw how sincere he was. He wasn't making anything up.* He wasn't sitting here. He wasn't -- he wasn't slouched down in his chair, speaking in a low voice when he gave his statement to the police and to the ASA.
>
> *He was very honest. He was being very honest*, and you'll have that evidence. You'll be able to look at it if you want, and *you can see how sincere he was*, and *you can tell that he was telling the truth at the time* -- the opportunity that he did have to tell the truth." (Emphasis added.)

Specifically, defendant asserts that the prosecutor did not restrict herself to asking the jury to infer that the recanted statement was true based on the demeanor evidence; she also offered her opinion about Merle's sincerity and honesty. Defendant further observes that the prosecutor opined that Merle "was telling the truth" and that "[h]e wasn't making anything up."

¶ 60    An assertion by the prosecutor that the State's witnesses testified truthfully is construed as an argument rather than as an expression of the prosecutor's personal opinion or a guarantee by the State's Attorney's office.  See *People v. Rivera*, 262 Ill. App. 3d 16, 27 (1994) ("In the remarks of which [the] defendant complains, the prosecutor merely asserted that certain witnesses testified truthfully," and the prosecutor "is entitled to assume the truth of the State's evidence."); *People v. Pryor*, 170 Ill. App. 3d 262, 273 (1988) (by telling the jury, " 'Downs is right.  Downs has told you what he saw.  Downs is believable. *** Downs is correct,' " the prosecutor merely assumed the truth of the State's evidence, as the prosecutor had a right to do, instead of placing the integrity of the State's Attorney's office behind the credibility of Downs); *People v. Agosto*, 70 Ill. App. 3d 851, 857 (1979) ("It is legitimate argument for the prosecutor to tell the jury the State's witnesses told the truth ***.").  Here, the prosecutor encouraged the jury to use their own senses to determine whether Merle's out-of-court statements were sincere.  By asserting to the jury that Merle had told the truth in his statements to the police as opposed to in open court, the prosecutor did nothing improper.  She merely assumed the truth of the State's evidence, as she was allowed to do.  See *Rivera*, 262 Ill. App. 3d at 27.

¶ 61                                        *Misstating the Evidence*

¶ 62    Defendant next argues that the prosecutor misstated the evidence three different times during closing argument.  The first is when she stated that "we all know" that Merle could not get a plea deal because he was in DuPage County custody and therefore the Cook County State's Attorney's Office "had no jurisdiction."  Defendant asserts there was no evidence presented during the trial on this point and therefore she was imparting her own personal knowledge on the jury.  In response, the State maintains there was nothing improper about this statement where it was based on the evidence and common sense.

¶ 63    We agree with the State.  "[P]rosecutors may discuss subjects of common experience or common sense in closing argument."  *People v. Runge*, 234 Ill. 2d 68, 146 (2009).  Our supreme court has also acknowledged that "jurors do not leave their common sense behind when they enter court" and therefore "it would seem proper for prosecutors to couch arguments in those terms and make appeals thereto."  *Id.*  Aside from it being common sense that a Cook County State's Attorney would not have jurisdiction over a DuPage County case, it was apparent from the testimony, particularly that of Detective Sullivan and ASA Longo, that Merle's cases in DuPage County and Cook County were separate.  Thus, the prosecutor's comments in this instance did not constitute error.

¶ 64    Second, defendant asserts that during rebuttal argument the State improperly argued that defendant frightened Merle into recanting his out-of-court statements during the trial:

> "And he couldn't do it [(tell the truth)] when he came before you, 2 days ago.  He couldn't do it then, because his friend is right there.  He was crouched down in his chair. Judge Maldonado had to tell him to speak up, because he's afraid of this guy.  He didn't want to confront him."

Immediately after this argument was made, the trial court *sua sponte* admonished the jury that "[a]ny statement by a lawyer that is not based on evidence should be disregarded by you.  Use your own recollection of the evidence."

¶ 65    Here, while there was no evidence that defendant threatened Merle into recanting his prior statements, the prosecutor was making a comment on Merle's demeanor while on the witness stand.  See *People v. Jackson*, 391 Ill. App. 3d 11, 44 (2009) (citing *People v. Byron*, 164 Ill.2d 279, 296-97 (1995)) ("[c]ommenting on a defendant's appearance during closing argument is implicitly recognized as falling within the bounds of legitimate argument.").  A

witness' demeanor while testifying is something the jury may consider when determining a witness' credibility. See *People v. Hood*, 229 Ill. App. 3d 202, 210 (1992) (the credibility of the witnesses and the weight given their testimony are determinations exclusively within the province of the jury, and where the resolution of guilt turns on the credibility of the witnesses, the jury is to determine that credibility since it has a superior opportunity to observe their manner and demeanor). In any event, any prejudice this comment may have caused defendant was cured by the trial court's *sua sponte* instruction to disregard statements made by counsel that were not based on the evidence. See *People v. Short*, 2020 IL App (1st) 162168, ¶ 77.

¶ 66    Lastly, defendant asserts that the prosecutor misrepresented the nature and quantity of the evidence against him in relation to the aggravated discharge of a firearm counts. During closing argument the prosecutor stated:

> "Everybody out there describes that this man walked up within feet of that automobile; and after he pumped bullet after bullet into the body of Eddie Jones, as Annette was moving over and attempting to peal away; and she screams, he pumps a bullet into that car as it's fleeing. He knew or certainly should have known, that there were people inside that car. The very reason he shot into it, is because there were people inside that car."

¶ 67    The State agrees that only Neely testified that he observed defendant shoot in the front windshield of the vehicle while occupied by him and Walton and that the above statement would be inaccurate if it implies that all of the witnesses so testified. The State, however, maintains that this comment does not warrant reversal of defendant's conviction because it was harmless given the fact that the jury was properly instructed that closing arguments were not evidence. We agree. The record reveals that the jury was admonished on multiple occasions by the trial

court that the statements by the attorneys is not evidence and should be disregarded if they misstate the evidence. See *id.* The jury was also told to rely only on their own recollection of the evidence. As previously discussed, it is presumed that the jury follows the trial court's instructions. See *Glasper*, 234 Ill. 2d at 201. It is highly unlikely that the jurors took the prosecutor's statement as evidence where the record clearly demonstrates that only Neely testified he observed defendant shoot into the vehicle. Consequently, we find that defendant was not sufficiently prejudiced by this statement so as to warrant a new trial. See *People v. Kelley*, 2015 IL App (1st) 132782, ¶ 84.

¶ 68                    *Questioning During Direct Examination*

¶ 69    In his final argument regarding prosecutorial misconduct, defendant asserts that the prosecutor erred when she elicited the fact defendant was apprehended by the "Fugitive Apprehension Unit" during her direct examination of Detective Sullivan. Defendant asserts that this information suggested to the jury that defendant was a fugitive and such evidence of flight, in turn, demonstrates consciousness of guilt. Defendant maintains this question was improper because it served to prejudice defendant in the eyes of the jury.

¶ 70    The record discloses that the prosecutor asked Detective Sullivan the following question, "Detective, did you have the opportunity to learn that the defendant had been arrested by Fugitive Apprehension Unit in early June of 2015?" To which he replied, "Yes."

¶ 71    In light of the evidence presented during the trial, we find the prosecutor's statement did not prejudice defendant. While the prosecutor did use the phrase "Fugitive Apprehension Unit," the phrase was not defined by Detective Sullivan and was not used again during the trial. While it is arguable that a prosecutor stating the formal name of the unit that apprehended the defendant is even evidence where no witness so testified, no other evidence was introduced at trial that

would suggest defendant's flight.  Indeed, there was no motion *in limine* regarding flight and no jury instructions were provided to the jury regarding flight.  In any event, we are of the opinion that this alleged error, when viewed in the context of the entire trial, did not prejudice defendant.

¶ 72     In sum, because we have concluded that no error occurred in many of the statements made by the prosecutor during closing argument and during direct examination, there can be no plain error.  *People v. Calhoun*, 404 Ill. App. 3d 362, 382-83 (2010).  Moreover, even if we were to consider those comments that could be considered error, such error would not rise to the level of plain error to constitute reversible error.  Generally, improper comments by a prosecutor "do not constitute reversible error unless they result in substantial prejudice to the accused and were material to [the] conviction."  *People v. Barker*, 298 Ill. App. 3d 751, 757 (1998).  As we discuss herein in considering defendant's challenges on appeal, the evidence at trial was not closely balanced; multiple eyewitnesses identified defendant as the shooter and Neely testified he observed defendant shoot into the vehicle's windshield.  See *People v. Carrilalez*, 2012 IL App (1st) 102687, ¶ 30 (the testimony of one eyewitness is sufficient to convict).  In addition, "[a]n instruction that closing arguments are not evidence and any statement not based on the evidence should be disregarded," as the trial court gave here, "tends to cure possible prejudice from improper remarks."  *People v. Thomas*, 200 Ill. App. 3d 268, 275 (1990).  Accordingly, we find that the challenged comments, even if erroneously permitted by the trial court, did not rise to the level of plain error to constitute reversible error.

¶ 73                              Sufficiency of the Evidence

¶ 74     Defendant next contends that the evidence was insufficient to support a conviction for two counts of aggravated discharge of a firearm (720 ILCS 5/24-1.2(a)(2) (West 2014)) where the evidence at trial demonstrated that five shots were fired at the victim and the victim suffered

five gunshot wounds. Defendant maintains that while a bullet did strike the windshield of the automobile in which Walton and Neely were riding, the bullet was not fired at the vehicle but at the victim. Accordingly, because no shot was fired at the automobile, the evidence is insufficient to sustain defendant's conviction for aggravated discharge of a weapon.

¶ 75    In response, the State asserts that the evidence demonstrated that defendant knowingly and intentionally pointed a firearm at the automobile's windshield and fired a shot. The State points to the testimony of multiple witnesses who observed defendant shooting at the victim as he stood next to the vehicle occupied by Walton and Neely. The State further points to evidence that the witnesses heard five to six shots fired.

¶ 76    In reviewing a challenge to the sufficiency of the evidence we determine whether, after viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Ross*, 229 Ill. 2d 255, 272 (2008). In our review, we are mindful that the trier of fact assesses the credibility of the witnesses, determines the appropriate weight of the testimony, and resolves conflicts or inconsistencies in the evidence. *People v. Naylor*, 229 Ill. 2d 584, 614 (2008). It is not the function of the reviewing court to retry the defendant or substitute its judgment for that of the trier of fact. *People v. Collins*, 214 Ill. 2d 206, 217 (2005). We will reverse a conviction only where the evidence is so unreasonable, improbable, or so unsatisfactory as to justify a reasonable doubt of the defendant's guilt. *People v. Campbell*, 147 Ill. 2d 363, 374-75 (1992).

¶ 77    "A person commits aggravated discharge of a firearm when he or she knowingly or intentionally *** [d]ischarges a firearm *** in the direction of a vehicle he or she knows or reasonably should know to be occupied by a person." 720 ILCS 5/24-1.2(a)(2) (West 2014). Defendant does not challenge that he lacked knowledge that the vehicle was occupied, instead he

maintains the evidence was insufficient to demonstrate he knowingly discharged the firearm in the direction of the vehicle.

¶ 78    Here, viewed in the light most favorable to the State, the evidence demonstrated that defendant intentionally fired his weapon at the vehicle occupied by Neely and Walton.  Neely testified as follows:

> "Q.  What -- did you see whether or not Skee [defendant] had shot anywhere else other than at Eddie?
>
> A.   Yes, he did.
>
> Q.  And where was that?
>
> A.  In the front windshield.
>
> Q.  The automobile that you were in?
>
> A.  Yes.
>
> Q.  The automobile that Annette was in?
>
> A.  Yes.
>
> Q.  And was that after or before Annette had hollered?
>
> A.  Pardon me, ma'am?
>
> Q.  Was that before or after Annette had hollered?
>
> A.  That was after she hollered.  He shot the windshield."

As the State correctly notes, one witness' testimony is sufficient to convict a defendant of an offense.  See *Carrilalez*, 2012 IL App (1st) 102687, ¶ 30.  Thus, Neely's clear testimony alone is sufficient evidence that defendant intentionally fired into the vehicle occupied by Neely and Walton.

¶ 79    In reply, defendant does not dispute that one witness' testimony is sufficient to convict.

He does, however, maintain that Neely's testimony "merely makes explicit the uncontested fact that, during the shooting, one of the bullets struck the windshield. And that fact does not permit one to rationally conclude beyond a reasonable doubt that a sixth shot was fired." Defendant contends that the physical evidence (five gunshot wounds, five fired shell casings recovered from the scene) demonstrates beyond a reasonable doubt that only five shots were fired and therefore it is impossible for defendant to have fired an additional shot at the vehicle. We disagree. At trial, Neely testified that he heard five or six shots. While she did not testify to an exact number, Walton testified that there was "constant shooting." Merle's testimony revealed that he heard five shots. The physical evidence recovered from the scene consisted of five fired shell casings and three bullets or bullet fragments. In making this argument that the evidence was insufficient to establish six shots were fired, defendant is essentially asking this court to reweigh the evidence. It is within the jury's purview to weigh the evidence and resolve any conflicts. See *People v. Petermon*, 2014 IL App (1st) 113536, ¶ 28. It is not the role of this court to reweigh the evidence on appeal. *People v. Reed*, 2018 IL App (1st) 160609, ¶ 37. The jury was presented with the physical evidence as well as the testimonies of the witnesses. As the State notes, the witnesses did not state that a specific number of shots were fired, but that there were "several" shots or "five or six" shots fired. The jury also had before it Neely's testimony that defendant specifically fired at the vehicle as he left the scene. We cannot say that the evidence presented here is so unreasonable, improbable, or so unsatisfactory as to justify a reasonable doubt of the defendant's guilt. See *Campbell*, 147 Ill. 2d at 374-75.

¶ 80                                    One Act, One Crime

¶ 81    Lastly, defendant contends that one of the two convictions for aggravated discharge of a firearm (720 ILCS 5/24-1.2(a)(2) (West 2014)) should be vacated under the one-act, one-crime

doctrine where the convictions were based on the same, singular shot. According to defendant, the State failed to allege that defendant shot at another person where the indictment charged defendant with shooting "in the direction of a vehicle he knew or should have known to be occupied by a person." Defendant further maintains that the State's theory at trial was that defendant shot one time at the vehicle, not at the individuals inside the vehicle.

¶ 82 The State asserts in response that defendant's two convictions for aggravated discharge of a firearm were proper because there were two victims. According to the State, both Neely and Walton were in the vehicle when defendant pointed the firearm in their direction and fired a shot through the vehicle's windshield. The State maintains that the plain language of the aggravated discharge statute provides that a defendant may be charged with either shooting at a person or at a vehicle a defendant knows is occupied by a person and thus there is no violation of the one-act, one-crime doctrine in this case.

¶ 83 As a threshold matter, defendant acknowledges that he forfeited this issue for appeal because he failed to object to the multiple convictions at trial and did not raise the issue in his posttrial motion. *People v. Enoch*, 122 Ill. 2d 176, 186 (1988). The parties agree, however, that our supreme court has repeatedly held that a one-act, one-crime violation is reviewable under the second prong of the plain error doctrine because it affects the integrity of the judicial process. *People v. Coats*, 2018 IL 121926, ¶ 10. Accordingly, we will consider the issue.

¶ 84 Whether a conviction should be vacated under the one-act, one-crime doctrine is a question of law which we review *de novo*. *Id.* ¶ 12. Under this rule, a defendant cannot be convicted of multiple offenses that are based on precisely the same single physical act. *Id.* ¶ 11 (citing *People v. King*, 66 Ill. 2d 551, 566 (1977)). Where a defendant is convicted of two such offenses, the conviction for the less serious offense must be vacated. *People v. Johnson*, 237 Ill.

2d 81, 97 (2010).

¶ 85    A defendant, however, can be convicted of separate offenses where a common act is part of multiple crimes. *People v. Rodriguez*, 169 Ill. 2d 183, 188 (1996). Our supreme court has consistently defined an "act" as "any overt or outward manifestation which will support a different offense." *Coats*, 2018 IL 121926, ¶ 15 (quoting *People v. King*, 66 Ill. 2d 551, 566 (1977)). Multiple convictions with concurrent sentences are permitted where defendant has committed multiple acts, "despite the interrelationship of those acts." *King*, 66 Ill. 2d at 566. Moreover, "when more than one offense arises from a series of incidental or closely related acts and the offenses are not, by definition, lesser included offenses, convictions with concurrent sentences can be entered." *Id.*

¶ 86    In clarifying the one-act, one-crime rule from *King*, the supreme court explained that a court must first determine whether the defendant's conduct consists of a single physical act or separate acts. *Coats*, 2018 IL 121926, ¶ 12 (citing *Rodriguez*, 169 Ill. 2d at 186). If the court determines that defendant committed multiple acts, it must then determine whether any of the offenses are lesser-included offenses. *Id.* If none of the offenses are lesser-included offenses, then multiple convictions may be entered. *Id.*

¶ 87    Under certain circumstances, multiple convictions for the same offense may be proper. *Coats*, 2018 IL 121926, ¶ 24. In such cases, the court should look to the legislative intent behind the statute and determine whether the evidence supports multiple violations. *Id.* To sustain multiple convictions, the charging instrument must indicate that the State intended to treat defendant's conduct as separate, multiple acts. *People v. Crespo*, 203 Ill. 2d 335, 345 (2001).

¶ 88    Here, the State charged defendant with two separate counts of aggravated discharge of a firearm under section 24-1.2(a)(2) of the Criminal Code of 1961 (720 ILCS 5/24-1.2(a)(2) (West

2014)).  That section provides that a defendant is guilty of the offense when he knowingly or intentionally "[d]ischarges a firearm in the direction of another person or in the direction of a vehicle he or she knows or reasonably should know to be occupied by a person."  *Id.*  The statute thus demonstrates that the legislature allowed for a defendant to be charged with either shooting at a person, or at a vehicle he knows is occupied by a person.  Because the statute defines the criminal act as being directed against a person, or at a vehicle occupied by a person, the statute reflects an intent to allow for multiple convictions where the defendant discharges a firearm at multiple people inside a vehicle.

¶ 89    The record reveals that in the indictment, each count identically alleged that defendant "KNOWINGLY DISCHARGED A FIREARM IN THE DIRECTION OF A VEHICLE HE KNEW OR SHOULD HAVE KNOWN TO BE OCCUPIED BY A PERSON, TO WIT:" and named a separate victim – Quinton Neely and Annette Walton.  The charging instrument thereby indicated that the State intended to treat defendant's conduct as four separate acts against two individual victims.  See *Crespo*, 203 Ill. 2d at 345.

¶ 90    The record further reveals that the evidence supported the two separate convictions.  Neely and Walton both testified that they were the two occupants in the vehicle.  They also testified that they heard multiple gunshots fired, with Neely specifying that he observed defendant shoot at the vehicle one time after he heard Walton cry out.  Based on this record, we conclude that defendant's convictions for two separate counts of the offense against two victims are proper.  See *Coats*, 2018 IL 121926, ¶ 24.

¶ 91    In reaching this determination, we find that defendant's reliance on *People v. Hardin*, 2012 IL App (1st) 100682, is misplaced.  In *Hardin*, the defendant was convicted of two counts of aggravated discharge of a firearm in the direction of a vehicle known to be occupied by a

peace officer. *Id.* ¶ 1. The evidence established that the defendant fired one gunshot at a police vehicle occupied by two officers. *Id.* ¶ 4. On appeal, the defendant argued that one of his convictions should be vacated under the one-act, one-crime doctrine because his convictions were for shooting at the vehicle itself, not at the officers inside, and he fired only one gunshot at one vehicle. *Id.* ¶ 25. This court agreed and vacated one of defendant's convictions. *Id.* ¶¶ 26-39.

¶ 92    In *Hardin*, however, the defendant was convicted under section 24-1.2(a)(4), which prohibits the discharge of a firearm in the direction of a *vehicle* occupied by a peace officer. 720 ILCS 5/24-1.2(a)(4) (West 2008). A separate subsection, (a)(3), prohibits discharge in the direction of a *person* known to be a peace officer. 720 ILCS 5/24-1.2(a)(3) (West 2008). *Id.* ¶ 27.

¶ 93    Unlike *Hardin*, here, defendant was convicted under subsection (a)(2), which provides that a defendant is guilty when he discharges a firearm *in the direction of another person or in the direction of a vehicle* he knows to be occupied by a person. Accordingly, defendant's two convictions for aggravated discharge of a firearm are proper.

¶ 94                                   CONCLUSION

¶ 95    For the reasons stated above, the judgment of the circuit court of Cook County is affirmed.

¶ 96    Affirmed.